# Steiner *et al.* v. Parsons.

*Bill in Equity by a Stockholder against the Corporation and its President to compel the latter to account for Funds appropriated by him.*

1. *Right of a stockholder to file bill to redress corporate wrongs; what must be shown.*—Before a stockholder can maintain a suit in his own name against the corporation of which he is a member and its president, for the fraudulent conversion by the latter of corporate funds to his own use, he must show to the satisfaction of the court that he has done all in his power to obtain, within the corporation itself, the redress of the wrongs complained of; that he has made an honest effort to get the governing body of the corporation to remedy the wrong, and, failing with them, he then applied to the stockholders as a body to take action towards redressing the grievances complained of.

2. *Same; when request of governing body need not be shown.*—A stockholder may file a bill in equity in his own name to enforce the rights of the corporation of which he is a member, without first requesting the directors or the governing body to redress the alleged corporate wrongs, when it is made to appear by the averments of the bill that, if such request had been made, it would have been refused, or, if granted, the litigation would have been under the direction and control of those who were themselves the wrongdoers.

3. *Same; bill must allege the facts showing excuse for not requesting governing body to sue, and not mere conclusions.*—Where a bill is filed by stockholder of a corporation, to have redressed alleged corporate wrongs, without having made a request of the managing body of the defendant corporation to have corrected the grievances complained of, the complainant must aver in his bill the facts constituting his excuse for not making such request with particularity and definiteness; the averment of conclusions will not suffice, but the facts upon which these conclusions are based must be averred.

4. *Allegations of fraud in bill of complaint.*—Fraud being a conclusion of law from facts stated, in a bill filed seeking relief on the ground of fraud, the facts out of which the fraud arises must be averred with definiteness; general averments of fraud, without the allegation of the facts showing the fraud, are not sufficient to justify the granting of relief.

APPEAL from the City Court of Birmingham, in Equity.

Heard before the Hon. H. A. SHARPE.

The bill was filed by the appellee, Parsons, against appellants, B. Steiner and the Birmingham, Powderly & Bessemer Street Railroad Company, a corporation, in his own behalf, as a stockholder, and in behalf of any other stockholder or stockholders in said corporation who choose to join as parties and contribute to the expense of the litigation. It alleges that the defendant Steiner is a stockholder of the defendant the Birmingham, Powderly & Bessemer Street Railroad Company, a corporation organized under the general incorporation laws of the State; that said Steiner is in possession of the office of president of said corporation, which office he unlawfully usurps; that there is pending in the circuit court of Jefferson county an action in the nature of a *quo warranto* to oust him from the office of director and president of said corporation; that I. R. Hochstader, Joseph Beitman, and L. G. Pettijohn, who live in Birmingham, Ala., J. W. Brown and D. H. Gordon, who live in Baltimore, Md., and E. Lesser, whose residence is alleged to be unknown, constitute, with said Steiner, the board of directors of said corporation; that from the 8th day of April, 1889, to the 24th day of February, 1890, said Steiner was regularly and duly elected and qualified as director of said corporation, and was also its treasurer and as such, was the custodian of the money and choses in action of the corporation during that period; that, while such treasurer, said Steiner fraudulently appropriated to his individual use $600 of the money of said corporation, and covered and concealed said fraudulent disposition of the funds by a voucher which purported to be given for a right-of-way for the railroad line, then being constructed, which voucher was false and fraudulent, and he now claims that said money was expended by him in procuring terminal facilities in the city of Birmingham for said railroad; that in the month of October, 1889, said Steiner was intrusted by said corporation with the sale of 125 $1,000 bonds of said corpoartion, secured by a deed of trust on all the property and franchises of the corporation, and said Steiner, as the trusted agent of said corporation, agreed to obtain for said bonds the highest price possible, and account for the entire proceeds of said bonds; that said Steiner sold said bonds in the city of Baltimore, Md.,

[Steiner *et al.* v. Parsons.]

and obtained for them their full face value—$1,000 for each bond—amounting in the aggregate to $125,000, but he reported to said corporation that he had sold said bonds at and for the sum of $850 for each bond, amounting to $106,250, and accounted to said corporation for said last named sum, and fraudulently appropriated to his own use the sum of $18,750 ; that complainant, although a director of said corporation at the time of the sale of said bonds, never knew until recently—until within a few weeks before the filing of this bill—that said Steiner had sold said bonds for $125,000, but believed he had sold them for $850 for each bond—$106,250 for all of them ; that in December, 1889, said Steiner claiming to be desirous of advancing the interest of the corporation, procured permission from the board of directors to purchase the necessary steel rails for the construction of the railroad line, and he procured about 700 tons of rails for such purpose, and sold them to the corporation for $33 per ton, and they were actually worth only about $15 per ton, and said Steiner paid about that price for the same, and actually made a profit of about $10 per ton on said rails ; that they were purchased from the Talladega & Coosa Valley Railroad Company, of which company said Steiner was at the time an officer ; that in order to cover up and conceal the said profits on said rails, so that complainant could not know the fraudulent appropriation of them by him, said Steiner obtained bills in the name of the Talladega & Coosa Valley Railroad Company to be made out, falsely showing the price of said rails to be $33 per ton ; that the allegations as to the purchase and sale of said rails to said corporation are made on the information and belief of complainant; that on the 2d of April, 1890, at a meeting of stockholders, at which a quorum was not present, and which it is charged was not a valid meeting, resolutions were adopted by the stockholders present, who did not represent a majority of the said stock of the corporation, authorizing the issue of bonds of the corporation to the Mercantile Trust & Deposit Company of Baltimore, Md., or bearer, for the payment of said amount of money; that said Steiner procured the delivery to himself of said bonds, and, with the aid of said Mercantile Trust & Deposit Company, sold them in the markets in the city of Baltimore, Md.,

and said Steiner has appropriated a large proportion of the proceeds of the sale of said bonds to his individual use and benefit, but how much complainant can not say. It is further charged in section 8 of the bill, in reference to the issue of said series of $125,000 of first mortgage bonds, that, among other things provided for in the deed of trust which was executed to the Mercantile Trust & Deposit Company by said corporation to secure them, it was provided as follows: ''And it is hereby understood and agreed that the proceeds of said bonds, as the same may be sold, shall be held by the party of the second part, to be paid out by the party of the second part for the purpose, first, of preparing and executing said bonds and this deed of trust, and paying all necessary expenses of constructing and equipping the railroad line of the party of the first part, including the purchase of engines, locomotives, rails, rolling stock, and all other materials for the construction and operation of said railroad line, and upon the draft of the president of the party of the first part, supported by certificates or sworn statements of the engineer in charge of construction of the road, that the work for which said bonds are to be issued has actually been done, or upon the draft of the president, accompanied by bills of lading for rail, motive power, or rolling stock, or other material especially for the use of said railroad;'' and it is averred that said Mercantile Trust & Deposit Company, from time to time, paid out the proceeds of the bonds of said corporation on drafts drawn by it, which money went into the hands of said B. Steiner; that a great portion of said money went into the construction of said railroad, as was intended, but a large portion of said money was obtained from said trust company by drafts drawn for construction of said railroad by the use of false certificates attached to said drafts, and, after the money was so drawn, and in the hands of said Steiner, it was, under various pretexts, appropriated by the said Steiner to his own use, for which he should be held to account. The further averment is made that the affairs of the corporation are now under the complete control of the said Steiner, and it can not, by reason of such control, bring this suit. Interrogatories were attached as a part of the bill, requiring defendants to make full, true, and direct answers, which interrogatories covered all the allegations of fraud

contained in the bill as having been perpetrated by said B. Steiner; and by the note to the bill the respondents are required to answer the statements of the bill, and the interrogatories thereto attached, under oath. The prayer is for an account, and that said Steiner be charged with and required to pay all sums of money belonging to said corporation which have been appropriated by him, and for general relief.

The bill was demurred to on many grounds, the demurrer sustained, amendments made at different times, to which demurrers were interposed and sustained, until finally, on the 3d of October, 1891, an amendment was allowed, as follows : "That the present board of directors of said corporation, or a large majority thereof, are under the control of the said B. Steiner, and a large majority thereof are interested as guilty parties in one or another of the frauds and wrongs hereinafter [hereinbefore] complained of, and this complainant alleges that on these accounts, and on account of all the litigation growing out of the management of the affairs of this corporation, of which there have been several suits in the chancery court of Jefferson county, the said board of directors have always acted and conspired together in defending against charges and wrongs and grievances similar to the present wrongs and grievances herein complained of, and it would have been utterly futile for this complainant to have applied to said board of directors to institute this suit to remedy the wrong-doings complained of herein in the name of complainant." The defendant Steiner demurred to the bill as thus amended on many grounds, among which was the following : That the bill fails to allege that any request has been made of said railroad corporation to institute proceedings or take steps to redress the alleged grievances set forth in the bill, or to show any sufficient excuse for the failure to make such request, and that no sufficient reason is shown for bringing the suit in the name of complainant, and not in the name of said corporation. To the eighth paragraph, specially, that its allegations are vague and indefinite, and do not advise the defendants of the cause of action which complainant claims to have against them ; that said section does not state how much or what particular portion of said fund went into the defendant's hands, or for what, or designate or describe any par-

ticular draft or drafts in which said money or any part thereof was received, or state which of said drafts were obtained by false pretenses, or what said false pretenses were.

The court overruled the demurrers, and the defendants appeal, and assign this interlocutory decree as error.

WHITE & HOWZE, for appellants.

LEA & BELL, *contra.*

HARALSON, J.—1. The bill in this case makes averments of fraud and usurpation against the defendant Steiner, as the president and managing officer of the defendant corporation, the Birmingham, Powderly & Bessemer Street Railroad Company, joined as a defendant, which, if true, call loudly for redress. It is filed by a stockholder, in his own behalf, and in behalf of all other stockholders of said corporation who may choose to make themselves parties complainant and agree to contribute to the expenses of the litigation. All the authorities agree that to justify a suit in this form the bill must show that suitable redress is not attainable through the action of the corporation. The right of the stockholders to file a bill of this character in their own name was well stated in *Hawes v. Oakland,* 104 U. S. 400, where it is said: ''But, in addition to the existence of grievances which call for this kind of relief, it is equally important that before the shareholder is permitted in his own name to institute and conduct a litigation which usually belongs to the corporation, he should show to the satisfaction of the court that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity to his wishes. He must make an earnest, not a simulated, effort with the managing body of the corporation to induce remedial action on their part, and this must be made apparent to the court. If time permits, or has permitted, he must show, if he fails with the directors, that he has made an honest effort to obtain action by the stockholders as a body in the matter of which he complains; and he must show a case, if this is not done, where it could not be done, or it was not reasonable to require it.'' To the same effect are our own adjudi-

cations.—*Manufacturing Co. v. Cox*, 68 Ala. 71; *Nathan v. Tompkins*, 82 Ala. 437; *Railroad Co. v. Woods*, 88 Ala. 631; *Mack v. Iron Co.*, 90 Ala. 396; *Samuel v. Holladay*, 1 Woolw. 400; 2 Spel. Priv. Corp., § 623.

2. But it is equally well settled by the foregoing authorities, and is generally held, that a stockholder may bring suit in equity in his own name to enforce the right of a corporation, without first requesting the directors to sue, when it is made to appear that, if such request had been made, it would have been refused, or, if granted, that the litigation following would necessarily be subject to the control of the persons opposed to its success; and that where the directors of a corporation are themselves the wrongdoers, or the partisans of the wrongdoer, they are incapacitated from acting as the representatives of the corporation in any litigation which may be instituted for the correction of the wrong which it is alleged they have committed and approved.—2 Beach. Corp., § 886; *Knoop v. Bohmrich*, (N. J. Ch.), 23 Atl. Rep. 118; *Dodge v. Woolsey*, 18 How. 331; *Cab Co. v. Yerkes*, (Ill. Sup.) 30 N. E. Rep. 671; *Miller v. Murray*, (Cal.) 30 Pac. Rep. 46; *City of Chicago v. Cameron*, 120 Ill. 447, 11 N. E. Rep. 899.

3. It is not pretended that complainant made any request of or effort with the managing body of the defendant corporation to induce them to redress the wrongs complained of, or to institute suit for that purpose. But the complainant attempts to show by averments that he had a good excuse for not making such request or effort, in that, if made, it would have been refused, or, if granted, the litigation following would necessarily have been subject to the control of persons opposed to its success. The allegations to this end are, (1) "that the affairs of the corporation are now under the complete control of the said Steiner, and that it can not, by reason of such control, bring this suit;" (2) "that the present board of directors, or a large majority of them, are under the control of said B. Steiner, and a large majority of them are interested as guilty parties in one or another of the frauds and wrongs complained of, and on these accounts, and on account of all the litigation growing out of the management of the affairs of this corporation, of which there have been several suits in the chancery court of Jefferson county, the said board of directors have

always acted and conspired together in defending against charges and wrongs and grievances similar to the present wrongs and grievances herein complained of, and it would have been utterly futile for complainant to have applied to said board of directors to institute this suit." It will be observed that these averments are the statements of conclusions, and not averments of facts upon which they rest. The first averment is purely so, not a fact upon which the allegation that said Steiner has complete control of the corporation being stated; and the second is not far removed from it in this respect. It is not stated how or in what manner a large majority of the directors are interested in the fraudulent transactions mentioned in the bill of which said Steiner is specially accused, nor in which of them, nor is information given as to the character of the suits referred to in the chancery court of Jefferson county in which said board of directors are charged to have acted and conspired together. It is said the wrongs and grievances there sought to be remedied were similar to those complained of here, but of this we have only the conclusions of the pleader. The facts upon which such averments of conclusions rest should have been set out, so that the court might judge intelligently for itself—as it is its high duty to do in such cases—whether the plaintiff had the right to proceed to file the bill in his own name or not. The particularity of averment to be observed in such cases has received extended discussion in adjudged cases, leaving scarcely anything to be added on the subject. *Brewer v. Boston Theater*, 104 Mass. 378 ; *Hawes v. Oakland, supra; Manufacturing Co. v. Cox, supra*, and authorities there cited.

4. Fraud is a conclusion of law from facts stated, and the facts out of which it arises, when desired to be pleaded, whether at law or in equity, must be stated. Mere general averments of fraud or the fraudulent conduct of a party, without the facts, do not constitute a plea upon which the court can pronounce judgment. *Insurance Co. v. Moog*, 78 Ala. 284; *Meadows v. Meadows*, 73 Ala. 356 ; *Pickett v. Pipkin*, 64 Ala. 520; *Flewellen v. Crane*, 58 Ala. 627. Tested by this rule, section 8 of the bill falls short of that definiteness of averment of fraud necessary in good pleading, and the demurrer to it should have been sustained.

Reversed and remanded.